IN RE PABLO ANDINO ESPEJO, querellado.

Núm. 62.—*Sometido:* Abril 5, 1945. *Resuelto:* Junio 15, 1945.

*Pablo Andino, pro se y Miranda & Miranda Esteve,* abogados éstos del querellado; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado dé El Pueblo.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El Fiscal de esta Corte, por delegación del Procurador General de Puerto Rico, instó el presente procedimiento de *disbarment* contra el abogado Pablo Andino Espejo, imputándole el haber otorgado, como notario, el 14 de octubre de 1944, una escritura pública a virtud de la cual Sixto Heleria Feliciano vendió a su concubina Gertrudis Cruz por el precio de "un dólar y otras consideraciones" una casa y solar, a pesar de constarle personalmente a dicho abogado que la mencionada propiedad desde hacía más de diez años no pertenecía al Sr. Heleria. Cumplidos todos los trámites de este procedimiento y por la apreciación de toda la prueba presentada el día de la vista consideramos que se han probado los siguientes hechos:

Que allá para el año 1929 Sixto Heleria Feliciano era dueño y tenía inscrita a su favor en el Registro de la Propiedad de San Juan una finca urbana, solar y càsa, ubicada en Santurce; que por escritura pública número 16 otorgada ante el notario Victoriano M. Fernández el 18 de mayo de 1929, Sixto Heleria Feliciano vendió dicha propiedad a la mercantil N. Ortega & Cía., a través del socio gestor de la misma Señor Roberto Quintero, por el precio de $400, de los cuales la compradora retuvo $300 para pagar una hipoteca a favor de don Isidro G. Luiña, que gravaba la propiedad; que dicho gravamen fué cancelado por escritura pública número 16 otorgada el 29 de mayo de 1933 ante el notario Victoriano M. Fernández; que el 31 de julio de 1933 la mercantil N. Ortega & Co. por su socio gestor Roberto Quintero vendió la propiedad a Joaquín Bonilla, por escritura pública número 28 otorgada ante el mismo notario an-

tes mencionado; que ninguna de estas escrituras de traspaso y cancelación de hipoteca fué inscrita en el Registro de la Propiedad por lo que del mismo aparecía Sixto Heleria Feliciano como dueño.

Que el 2 de octubre de 1944 el querellado Pablo Andino Espejo visitó al Sr. Roberto Quintero en su casa residencia y le manifestó que representaba a un veterano que era el dueño de la casa que Quintero estaba administrando y cobrando sus rentas; que Quintero le informó que él le había comprado esa casa a Heleria en el año 1929 y se la había vendido a Bonilla años después, a lo que le contestó el querellado que ellos ''habían estado cobrando la renta de la casa por espacio de todo ese tiempo y esa renta la van a tener que reembolsar,'' que ''Aquí lo que podemos hacer es que yo me voy a ocupar de arreglar el asunto definitivamente. A este hombre hay que darle dinero'' para que arreglase todas las escrituras y que si no atendía a la transacción iban a vender la casa; que Quintero le contestó que tendría que hablar con Bonilla que era quien había estado percibiendo las rentas de la casa y el querellado le contestó que podía esperarlo tres o cuatro días. Que en efecto Quintero impuso a Bonilla de lo ocurrido y ambos fueron donde el abogado de Bonilla, Lic. Eduardo H. F. Dottin, y le informaron lo ocurrido y dicho letrado les aconsejó que no dieran un centavo y que si Heleria vendía la casa sería una

---

(1)En cuanto a la visita que le hizo Quintero el Lic. Dottin declaró lo siguiente:

''Vino Roberto Quintero muy asustado también, y yo para asustarlo más le digo, ''Mire, Bonilla tiene el derecho de demandar en ejecución, quiere la finca''. Me dijo, ''Ese hombre, ese abogado me ha dado unos días para que yo arregle con él, y que si no arreglo el asunto va a perder la finca. Le he dicho que la finca no es mía.'' ''Sí, pero yo quiero que se arregle esto. ¿Y quién es el abogado o notario que ha estado interviniendo en esto?'' ''Pablo Andino.'' '' ¡Pablo Andino!'' ''Sí, me ha dado dos días y tengo que resolver.'' ''Hombre, eso es un *bluff* de Pablo Andino, si lo ha hecho.'' Le dije, ''Mire, no dé un centavo a nadie, que eso es una vagabundería de Heleria. No dé un centavo, no importa que la finca esté sin inscribir todavía. Él ha vendido en escritura pública, y no tiene para qué molestarse. Ahora, sí tráigame las escrituras.''

venta nula e incurría en un delito grave.([1])   Se probó además, que en el mes de septiembre de 1944, Bonilla, a quien el Lic. Dottin había solicitado le consiguiera las escrituras de constitución de la sociedad Ortega & Cía. y la de venta original y cancelación de hipoteca, con el fin de poder inscribir la compra hecha por Bonilla, había hablado con Sixto Heleria para que le consiguiera la escritura en que él le había vendido a Ortega & Cía, ofreciéndole pagarle porque se la buscara; que Heleria ofreció hacerlo pero luego volvió donde él y le dijo que necesitaba dinero a lo que Bonilla le manifestó que le llevara la escritura que no saldría descontento; que cuatro o seis días después Heleria volvió donde Bonilla y le dijo "Voy a consultar con un abogado porque yo estoy mal" y se fué; que a los pocos días Quintero le informó lo ocurrido con el querellado.

Por último se probó que, a pesar de tener conocimiento el querellado que la casa y solar en cuestión habían sido vendidas por Heleria a Ortega & Cía. y por esta mercantil a Joaquín Bonilla hacía más de diez años, el 14 de octubre de 1944 o sea con posterioridad a su entrevista con Quintero, otorgó como notario la escritura número 53 a virtud de la cual Sixto Heleria Feliciano le vendió a su concubina Gertrudis Cruz (que se probó había sido sirvienta en la casa del querellado) por el precio de un dólar y otras consideraciones; que dicha escritura fué presentada en el Registro de la Propiedad de San Juan el 24 de octubre e inscrita el 25 de octubre de 1944; que con posterioridad a esta última fecha el querellado visitó al Lic. Dottin y le solicitó datos sobre la escritura de cancelación de hipoteca que le fueron suministrados y en el curso de la conversación, según la relata el Lic. Dottin, éste le dijo al querellado que le habían "avisado que Heleria trata de vender por segunda vez esa finca" y que el querellado entonces le informó que Helería ya había vendido la finca y que él había hecho la escritura de venta y la había inscrito en el Registro; que el quere-

llado no le dijo a quién se había vendido pero que sí le dijo que "Heleria era un viejo veterano y como tal estaba interesado en el asunto"; que al día siguiente el Lic. Dottin comprobó en el Registro de la Propiedad que la finca había sido vendida por Heleria a su concubina y pocos días después el Lic. Dottin radicó, a nombre de Bonilla, en la Corte de Distrito de San Juan una acción sobre nulidad de la venta efectuada y anotó la demanda en el registro, y algún tiempo después el querellado, a nombre de Heleria y Gertrudis Cruz, contestó dicha demanda, estando el caso pendiente de vista.

El querellado prestó declaración en su defensa y negó que hubiera visitado al Sr. Roberto Quintero el 2 de octubre de 1944 y sostuvo que dicha visita no tuvo lugar hasta el 20 de noviembre de dicho año y que el motivo de la misma fué solicitar de Quintero la escritura de cancelación de la hipoteca de Isidro G. Luiña que gravaba la finca y que Quintero le dijo que no recordaba si la había hecho el Lic. Adrián Agosto o el Lic. Dottin y que fuera donde ellos; que fué donde el Lic. Agosto y éste le dijo que él no había otorgado la escritura y entonces estuvo en la oficina del Lic. Dottin y éste le suministró los datos y fué al Archivo General de Protocolos y obtuvo una certificación; que el Lic. Dottin le informó que Quintero le había dicho que Heleria le había pasado la casa a su concubina; que no fué hasta que estuvo en el Archivo General que se enteró que Heleria le había vendido la casa a Ortega & Compañía y que varios años después dicha mercantil se la había vendido a Joaquín Bonilla. En cuanto a la escritura otorgada por él el 14 de octubre de 1944 afirmó que lo había hecho a requerimiento de Gertrudis Cruz pues su exconcubino Heleria quería traspasarle la casa porque habían trabajado juntos y con lo que ganaron fué que Heleria compró la casa originalmente y que éste quería pasarle la casa gratis a Gertrudis y por eso fué que

él hizo constar que el precio de la venta era un dólar y otras consideraciones.(²)

De acuerdo con los hechos probados en este caso no tenemos duda alguna de que el 14 de octubre de 1944 cuando el querellado otorgó como notario la escritura a virtud de la cual Sixto Heleria Feliciano vendió a su concubina Gertrudis Cruz la casa en cuestión por la suma de un dólar y otras consideraciones, al querellado le constaba que Heleria no era el dueño de la propiedad por habérselo así informado el Sr. Quintero cuando el querellado lo visitó a principios del mes de octubre. Que el querellado le habló a Quintero en el sentido de que representaba a un veterano quedó corroborado por el testimonio del Lic. Dottin cuando afirmó que el querellado le había dicho que "Heleria era un viejo veterano" y asimismo quedó corroborado el hecho de que la visita que hizo el querellado a Quintero fué a principios del mes de octubre, y no en noviembre, pues el Lic. Dottin afirmó que el Sr. Quintero le visitó con más de tres semanas de antelación que el querellado y le informó que éste "le había pedido qué sé yo cuántas cosas." Es significativo, además, el hecho de que de acuerdo con la declaración del Sr. Bonilla, en el mes de septiembre de 1944 él ofreció pagarle a Heleria si éste le conseguía las escrituras originales y, que·al no adelantarle dinero, Heleria le manifestó que iba a con-

---

(²)En relación con la declaración del querellado es conveniente hacer constar que el Lc. Dottin, a repreguntas del propio querellado, declaró lo siguiente:

"P. ¿Qué tiempo transcurrió entre la visita que le hiciera a usted Quintero, anunciándole este asunto, y la visita mía?

"R. Quintero me parece que hizo más de una visita. Por lo menos dos.

"P. Un momento. Para aclarar. ¿Qué tiempo transcurrió entre la visita que dice que yo había estado en la casa de Quintero, y la visita mía?

"R. ¿Qué tiempo transcurrió entre la visita de Quintero, cuando me dijo que usted había ido donde él? *Más de tres semanas.*

"P. ¿No serán tres días?

"R. *No. El hombre vino a mi oficina diciéndome que usted había pedido qué se yo cuántas cosas,* le pedí escrituras, me trajo una, ésa no era suficiente, se fué, y me trajo la otra, para darle a su señoría las notas que le di en mi oficina." (Bastardillas nuestras.)

sultar con un abogado y a los pocos días fué que Quintero le informó a Bonilla de la visita que le hizo el querellado.

A nuestro juicio las alegaciones de la querella, en tanto en cuanto por ellas se imputa al querellado haber tenido conocimiento de que Sixto Heleria Feliciano no era dueño de la casa que vendió a su concubina el 14 de octubre de 1944 y que dicho hecho le constaba por habérselo así manifestado el Sr. Roberto Quintero el día 2 de octubre de 1944 cuando el querellado lo visitó y requirió, a nombre de un veterano que según el querellado era el dueño de la casa, para que le reembolsara las rentas de la casa, porque al veterano había que darle dinero o de lo contrario iba a vender la casa, han quedado plenamente comprobadas.

Siendo los actos realizados por el abogado Pablo Andino Espejo constitutivos de conducta inmoral en el desempeño de sus deberes profesionales, *procede separarlo del ejercicio de la abogacía y en su consecuencia también del notariado y eliminar su nombre del Registro de Abogados por el término de dos años, a partir de la fecha de la sentencia que en este caso se dictará.*